## Warrington's Estate.

*Wills—Construction—Trusts and trustees—Separate trusts for different children—Remainders—"Trustees of living beneficiaries."*

Where testatrix created separate trusts for three daughters for life, with remainder to their children, and a fourth trust for the wife of a deceased son for life, with remainder for life to a daughter of such son, and directed that if two of the daughters, who were unmarried, should die without children or issue of children surviving, their shares should be "divided equally among the trustees of the living beneficiaries," and further directed that the share of the married daughter should, upon the death of such daughter, go to her grandchildren, and it appears that one of the unmarried daughters survived all of the children, leaving in existence as descendants of testatrix only a grandson of the deceased married daughter and the granddaughter of the testatrix's son as to whom the trust continued, such granddaughter's trustees take, to the exclusion of the grandson, the principal of the trust held for the surviving deceased unmarried daughter.

Exceptions to adjudication.   O. C. Phila. Co., Jan. T., 1903, Nos. 229 and 231.

The auditing judge (THOMPSON, J.) filed an adjudication, from which the following is an extract:

"The testatrix died March 4, 1898, and the fund accounted for represents the share of her estate held in trust for the benefit of her daughter, Anna B. Warrington, now deceased, the trust arising under paragraphs 4, 7 and 9 of testatrix's will.

"Paragraph 4 is as follows:

" 'Fourth. I give, devise and bequeath unto Horace Stokes and Anna B. Warrington, their heirs, successors and assigns, the house and lot known as 1646 Beckett Street in the said City of Philadelphia, In trust to pay the taxes, water rents and repairs and to remit the balance of the net income, rents, issues and profits to my daughter Anna B. Warrington for and during the term of her natural life, and upon the death of the said Anna B. Warrington to convey the said property for the purposes and uses set out in the Seventh clause of this my will, subject to all trusts, limitations and conditions therein provided for.'

"Paragraph 7 is as follows:

" 'Seventh. I give, devise and bequeath all that part of my estate now in the hands of Horace Stokes and Anna B. Warrington, substituted Trustees for Israel H. Johnson under the decree of the Court of Common Pleas of Philadelphia, not hereinbefore or hereinafter disposed of in equal parts, and I do hereby give, devise and bequeath one equal share or part to the trustees of my daughter, Mary W. Stokes as nominated in Item Two of my will, one share to the trustees of my daughter Susan N. Warrington as nominated in Item Three and one equal share or portion to the trustees of my daughter Anna B. Warrington as nominated in Item Four, and one equal share or portion to my executors to be held in trust for my daughter-in-law, Louisa R. Warrington, and her daughter, subject to all the conditions, limitations and provisions of the trust provided for them in Item Six of this my will. [Item 6 gave Louisa a life estate in a trust fund therein described, with equitable remainder for life to her daughter, with gifts over of the capital.—Ed.]   As to the shares or portions hereby bequeathed in trust for my daughters Susan and Anna, I direct that the net income thereof shall be paid to them respectively during their natural lives and upon the death of either daughter, Susan or Anna, without leaving any child or children her surviving or the issue of any deceased child, such child or children to take the parent's share, her share shall be divided equally among the trustees of the living beneficiaries under this Item of my will and as to any share or portion which may pass to the

Warrington's Estate.

Trustees of my said daughter Mary W. Stokes, I direct that the net income of such share or portion shall be paid to the said Mary W. Stokes during the full term of her natural life, and upon the death of said Mary W. Stokes, I direct that the principal of the share or portion of the income of which she, if living, would have been entitled, shall be paid, conveyed, assigned and set over absolutely and in fee to the grandchildren of the said Mary W. Stokes, children of her son Horace Stokes.'

"Paragraph 9 is as follows:

" 'Ninth. I give, devise and bequeath my remaining house and lot on Beckett Street in the said City of Philadelphia and my undivided interest in the house and lot in Moorestown where I now reside and all the rest, residue and remainder of my estate of whatsoever kind and wherever situate, either in my possession or over which I have power of appointment by my will, to the trustees of my three daughters, Mary, Susan and Anna, subject to all the limitations, trusts and provisions relating to them as set out in Item Seventh of this my will, it being my deliberate intent and purpose not to die intestate as to any portion of my estate.'

"The account is filed because of the death of Anna B. Warrington, the life-tenant, on Aug. 31, 1923. She died without issue, so that the provisions of the seventh paragraph of the will became operative, and the trust fund is distributable as therein directed, 'equally among the trustees of the living beneficiaries under this item of my will.'

"There are four separate trusts referred to in the seventh item of the will—one for the benefit of testatrix's daughter, Mary W. Stokes, for life; another for the benefit of her daughter, Susan N. Warrington, for life; another for the benefit of her daughter, Anna B. Warrington, for life, and another for the benefit of her daughter-in-law, Louisa R. Warrington, for life, and after her death, for the benefit of Mary T. W. Murphy, daughter of Louisa R. Warrington, for life.

"Of these beneficiaries, Susan N. Warrington died Oct. 23, 1920, unmarried and without issue; Mary W. Stokes died April 26, 1923, leaving as her only living issue a grandson, J. Warrington Stokes, the only child of her deceased son, Horace Stokes, who, under the terms of the will, is entitled to take the corpus of her share. Anna B. Warrington died, as above stated, on Aug. 31, 1923, without issue; Louisa R. Warrington died Sept. 9, 1917, and her daughter, Mary T. W. Murphy, is still living. It, therefore, appears that at the time of the death of Anna B. Warrington in August, 1923, only one of the life-tenants, namely, Mary T. W. Murphy, was living.

"The question arises what the testatrix meant by the expression 'trustees of the living beneficiaries' under Item 7 of her will. It is contended by Mr. Shipley that J. Warrington Stokes is a living beneficiary under the trust for Mary W. Stokes, above referred to, and that the corpus of the trust fund now accounted for (being the share held in trust for Anna B. Warrington) should be distributed equally between J. Warrington Stokes and the trustees for Mary T. W. Murphy, they being the only living beneficiaries at the time of the death of Anna B. Warrington. Mr. Dechert, on the other hand, contends that Mary T. W. Murphy is the only living beneficiary under the trusts referred to in the seventh item of the will, and that the whole fund passes to the trustees for her benefit to the exclusion of J. Warrington Stokes.

"It is clear that, as Susan N. Warrington died in 1920 without issue, there were no living beneficiaries under her trust at the time of the death of Anna in 1923. As to the trust for Louisa R. Warrington and Mary T. W. Murphy, the latter is living and clearly comes within the designation of a 'living bene-

4 D. & C.

ficiary' under this trust. The controversy arises, however, over the trust for Mary W. Stokes. She died in April, 1923, before Anna, and the remainder-man under her trust, J. Warrington Stokes, claims to be entitled to participate in the distribution on the ground that he is a living beneficiary under the trust for Mary W. Stokes.

"In order to sustain the contention of counsel for Mr. Stokes, the words 'living beneficiaries' must be construed to include not only life-tenants, but also remaindermen under the trusts referred to. While it is true that in a broad sense a remainderman is a living beneficiary under a trust, I do not think the testatrix used the words in this sense, but that she intended to restrict the meaning of these words so as to include only living life-tenants under the trusts in question. This is indicated by the use of the words 'trustees of' immediately preceding the words 'living beneficiaries,' which shows that the testatrix intended the fund to pass only to those trusts in which the life-tenants are still living; that is, where the trust is a continuing one and there is a trustee to take the fund and hold it for the benefit of the life-tenant. Had the testatrix intended to include remaindermen in the clause under consideration, the words 'trustees of' would be meaningless, for the reason that when a remainderman comes into the possession and enjoyment of an estate, the life-tenant is dead and trustees are no longer necessary. By the use of the words 'trustees of the living beneficiaries,' the testatrix necessarily must have intended that the fund should be distributed to the trustees of those trusts in which there were life-tenants living at the time of distribution, and not to trusts in which only remaindermen are living. This construction is the natural and ordinary meaning of the words used and gives effect to all the words of the will. In Rudman's Estate (No. 2), 244 Pa. 252, it was said: 'The court is bound to give effect to every word in a will without change or rejection, if any effect can be given not inconsistent with the general effect of the whole instrument.' See, also, Patton's Estate, 268 Pa. 367.

"It is argued, however, that the intention of the testatrix to include J. Warrington Stokes in the present distribution is further shown by the latter part of the seventh clause of the will, which provides as follows: 'and as to any share or portion which may pass to the trustees of my said daughter Mary W. Stokes, I direct that the net income of such share or portion shall be paid to the said Mary W. Stokes during the full term of her natural life and upon the death of said Mary W. Stokes, I direct that the principal of the share or portion of the income of which she, if living, would have been entitled, shall be paid, conveyed, assigned and set over absolutely and in fee to the grandchildren of the said Mary W. Stokes, children of her son Horace Stokes.'

"It is contended that this language of the will shows that even though Mary W. Stokes may not be living at the time of distribution, nevertheless, there is a dry trust to pay the principal to the remaindermen, and that the principal which would have passed to the trustees for the benefit of Mary W. Stokes, if she were living now, passes to J. Warrington Stokes as such remainderman. I do not think this contention can be sustained, for the reason that the clause referred to is merely a statement of the disposition to be made of any share which might accrue for the benefit of the Mary W. Stokes trust. There is nothing in this clause showing that either the life-tenants or remaindermen under that trust are certain to receive any share from the other trusts. The testatrix uses the words, 'as to *any* share which *may* pass to the trustees of my said daughter Mary W. Stokes,' &c., thus showing that there was some doubt in the mind of the testatrix whether the Mary W. Stokes trust would take any share at all from the trusts for Anna or Susan, this doubt arising

from the fact that Mary W. Stokes might not be living at the time of the death of Anna and Susan, in which event her trust would not participate in the distribution because she would not be a living beneficiary at that time.

"I have, therefore, reached the conclusion that only those trusts in which there are life-tenants living at the time of the death of Anna B. Warrington have a right to participate in the present distribution, and as Mary T. W. Murphy was the only life-tenant living at that time, the whole fund passes to the trustees for her benefit, and an award will be made accordingly."

*Walter Penn Shipley*, for exceptions filed by J. Warrington Stokes.

*Robert Dechert*, for Commonwealth Title Insurance and Trust Company, substituted trustee for Mary T. Warrington Murphy, contra.

GEST, J., April 25, 1924.—We are of opinion that the auditing judge correctly construed the will of the testatrix, and, for the reasons set forth in his adjudication, the exceptions are dismissed and the adjudication is confirmed absolutely.

---

## Schuman v. Barry.

*Vendor and vendee—Contract—Sale of land—Recovery of hand-money—Affidavit of defence—Failure of performance.*

1. A party who has advanced money or done an act in part performance of an agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed to fulfill all the stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.

2. In an action by the vendee of real estate against the vendor, who contracted as equitable owner, to recover back the first instalment of purchase money, an affidavit of defence is sufficient which avers that plaintiff did not pay the second instalment of purchase money under the contract, denies specifically and clearly that defendant refused to perform his part of the contract, and alleges that defendant was always able and willing to perform his part of the agreement with plaintiff.

Rule for judgment for want of a sufficient affidavit of defence. C. P. No. 5, Phila. Co., Sept. Term, 1923, No. 7525.

*B. H. Wolf*, for plaintiff; *C. Brewster Rhoads*, for defendant.

MARTIN, P. J., March 31, 1924.—The plaintiff has taken a rule for judgment for want of a sufficient affidavit of defence in a claim for the recovery of $1250, being first payment under a written contract for the purchase of premises No. 2116 Walnut Street, in the City of Philadelphia.

The written contract in question was admittedly made with the defendant as "equitable owner," and provided for the payment of said $1250 at the execution of the agreement on May 10, 1923, an additional sum of $1250 within ten days, $40,000 to remain as a ground rent, "to be redeemed within five years from the date of settlement," $20,000 to be secured to the seller by a second mortgage, and the balance of the consideration of $65,000 to be paid at the time of settlement, which was to be within sixty days from the date of the agreement, which time was of the essence of the contract. The agreement contained no provision of forfeiture or for the payment of liquidated damages in the event of breach. The statement of the plaintiff set forth, *inter alia*, that on or about May 20, 1923, when the second payment of $1250 was due, the defendant notified the plaintiff that he would not carry out the terms of the agreement; that the defendant's contract with the then owner of said

4 D. & C.